## No. 14,459.

STRONG LEASING AND MINING COMPANY *v.* LAGASSE.

(96 P. [2d] 891)

Decided November 20, 1939.

Mr. A. B. MANNING, for plaintiff in error.

Mr. JOHN F. MUELLER, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, to which we shall hereinafter refer as defendant, was incorporated under the laws of Colorado October 3, 1933, with the object of developing certain mining properties located in Teller county. Prior to the incorporation of the company the promoters thereof, including one Kitrell and Weissbaum, solicited and sold to the public, by advance subscriptions, what were designated as ore warrants which were to be redeemed from twenty-five per cent of the net returns from shipments of ore from the defendant's property. With each subscription for ore warrants it was promised that a certain amount of stock of the company would be issued to the purchaser as a bonus. In 1935 the defendant corporation sought the approval of the Federal Securities and Exchange Commission for a public offering of certain of its securities. At this time there were outstanding in the hands of the public $18,300 at face of the ore warrants and 75,500 shares of stock which had been given as bonuses to the purchasers of ore warrants. As a condition to the approval of the public offering the Securities and Exchange Commission required that the defendant offer to purchasers of the ore warrants, the option to rescind the previous purchase and receive back their money or confirm the prior purchase and retain the ore warrants and bonus stock. In accordance with this requirement the defendant sent a letter accompanied by its prospectus to such purchasers giving them thirty days within which to exercise the option mentioned. Within the prescribed period and in the manner required by the letter, the defendant in error, whom we shall designate as the plaintiff, advised the company that he had invested $3750 in ore warrants, elected to rescind the transaction and requested the return of this amount of money. In the communication plaintiff stated that his holdings consisted of $4,000 face value of ore warrants and 10,665 shares of stock. When the defendant refused to accept the return of the securities or pay the money claimed, plaintiff instituted this action in con-

tract. After a trial on the merits, without the intervention of a jury, judgment was entered in the district court in favor of the plaintiff for the full amount sued for and defendant here seeks a review of that adjudication. Besides disclosing much of the matter hereinabove stated, plaintiff alleged that prior to the incorporation of the defendant company the plaintiff orally agreed with two of its promoters, shown by the evidence to have been Kitrell, an ex-convict, and one Weissbaum, to purchase $7,000 in par value of certain ore warrants and 17,500 shares of stock for the sum of $3,500, which warrants and stock were to be issued on the formation of the company; that plaintiff paid the $3,500 to the two promoters and afterwards, through the transfer of certain drug stock and a small amount of cash, contributed an additional $250 on said transaction, and that thereafter, when incorporated, the defendant ratified and confirmed the agreement and delivered to the plaintiff the four ore warrants in the denomination of $1,000 and a trustee's interim certificate for 10,665 shares of the capital stock now held by him. In addition to other matters hereinafter discussed, the answer specially alleged that the offer to repurchase required by the Securities and Exchange Commission was executed by the defendant under illegal duress and compulsion and without consideration of any kind and that the purported offer was ultra vires and beyond the power or authority of any officer or agent of the corporation and contrary to the laws of Colorado.

The record patently establishes the frivolousness of the defense of duress. The defendant itself petitioned the Securities and Exchange Commission to authorize the public sale of securities and then, upon the repurchase condition being imposed by the commission, spontaneously promulgated the offer in order that it might thereby be authorized to sell its securities to the public. To claim, under such circumstances, that in so voluntarily proceeding it was acting under duress is hardly

conscionable. The assertion that the offer was ultra vires is equally trivial. As the basis for this contention defendant cites section 24, chapter 41, '35 C. S. A., which prohibits the impairment of the capital of any corporation through the purchase of its own stock. This provision has no bearing upon this transaction. Here the thing originally sold was ore warrants and the offer was for their repurchase. The stock involved in the transaction was a gratuity to the purchaser in the first instance, and upon his rescission of the purchase of the ore warrants the stock came back to the company on the same basis. Neither transaction amounted to a purchase in the sense contemplated by the statute. Further, in deliberately proceeding in conformity with direction of the Securities and Exchange Commission, defendant must have determined that the anticipated benefit arising to it through the public offer of its securities was greater than any detriment which would occur from a repurchase of the ore warrants. This conclusion clearly is supported by the prospectus prepared by the company and transmitted with the offer. Thus, consideration, if necessary at all, is imported to the transaction. Nor can defendant in this proceeding involving an innocent third party, raise the question of the alleged lack of consideration in the original issue of the ore warrants to Kitrell and Weissbaum, since after the incorporation of the company the board of directors expressly authorized their issuance in payment for property transferred to the corporation and by making the repurchase offer, again ratified their validity.

The proof conclusively established that plaintiff paid the promoters $3,750. As disclosed by the terms of the receipts for $3,500 of this sum signed by Kitrell, which were introduced in evidence, and by the testimony of plaintiff, it would appear that the promoters promised to have issued to plaintiff ore warrants of a face value of twice his investment. Notwithstanding, as is admitted by the answer, no ore warrants or bonus

stock, other than that held by plaintiff when the action was brought, were issued to him by the company and he testified that no additional certificates were ever delivered to him by the promoters. With respect to this situation the answer alleged that *subsequent* to the purported agreement between plaintiff and the promoters and *previous* to the issuance of the ore warrants and stock held by the plaintiff, the latter had sold and assigned $3,500 in face value of said ore warrants and one-half of the bonus stock and that defendant, acting upon the written authorization of plaintiff, had caused one-half of said ore warrants and one-half of said stock to be issued and delivered to the order of Kitrell, whereby plaintiff had placed one-half of the securities originally due him beyond his control and thus was unable to comply with the terms of the repurchase offer. As a witness, plaintiff denied that he had made any such sale, assignment or transfer. He testified that when he received the ore warrants and stock he thought they reflected his entire investment and so did not check them against the receipts which he had received some time previously and did not know of the discrepancy in amounts until advised thereof by his auditor at a considerably later period. He further testified that he had never requested the company to issue ore warrants and stock to the amount he was supposed to receive, but said that upon several occasions he had pleaded for the return of his money. As is evidenced by the circumstance that, in the first instance, plaintiff gave the promoters an unrestricted power of attorney to borrow and receive money on plaintiff's life insurance policies to purchase the ore warrants, it would appear that until their duplicity was suggested, he trusted the promoters implicity, as a result of which it easily can be understood why he did not check the certificates when he received them. Except through one statement of the president of the company in the nature of pure hearsay, the defendant offered no evidence whatsoever at the

trial in support of the alleged defense under discussion. Under this state of the record plaintiff, having established that his original investment was $3,750, that the securities he tendered back were all he ever received therefor, and that pursuant to defendant's offer he had elected to rescind and, in the words of the prospectus transmitted with the offer to repurchase, "receive back his money," judgment could not have been otherwise than for plaintiff.

However, defendant strenuously argues that it was wrongfully precluded from producing evidence in support of this defense by the trial court's action in denying defendant's motion for continuance. This motion was orally interposed on the day of trial, June 2, 1938, and was supported by the affidavit of counsel for defendant. The affidavit stated that on or about March 26, 1938, affiant for the first time ascertained that certain documents consisting, inter alia, of an instrument of assignment dated November 17, 1933, purporting to be signed by the plaintiff, transferring, setting over, and assigning from the plaintiff to L. E. Webster or J. D. Kitrell, $3,500 in face value of ore warrants of defendant company, and 8,750 shares of stock in said company; a receipt for the stock plaintiff actually received and two promissory notes allegedly signed by him, were in the possession of a named attorney at law in Denver, Colorado; that thereafter the case was set for trial for June 2d, but that said attorney was absent from the city so that service of process could not be obtained until June 1 when a subpoena duces tecum was served; that upon the day of trial affiant was informed that said documents were no longer in the file of the other attorney but had been sent to New York City and could not be made available for a period of ten days or two weeks. Since the plaintiff admitted on the witness stand that he had likely signed a receipt for the securities actually delivered to him, the production of such a receipt would not support the alleged defense and the relevancy of

the promissory notes thereto is not suggested. To permit the admission of any of the purported assignments as evidence at the trial, if otherwise pertinent, it would be necessary to establish that in truth and fact they were signed by the plaintiff. It is to be observed that the affidavit does not so allege, nor was there any showing to the effect that defendant could produce other evidence establishing this vital fact. We further are of the opinion that defendant failed to show the diligence required as a condition precedent to the granting of a continuance. Code, §195. It is admitted that counsel for defendant knew of the existence of these documents and their whereabouts in the city and county of Denver on March 26, 1938, which was previous to the time the answer was filed.. The case originally was set for trial for April 27, 1938, when, upon the application of defendant, continuance was had to June second. In testifying in support of the motion for continuance upon its renewal previous to the submission of the case, counsel for defendant stated that the alleged evidence "was in the hands of an attorney representing adverse interests and not friendly in any way with my client * * * and I felt that any subpoena that might be issued in the first instance at any unduly long period before the trial of the case would be used to my disadvantage, and the evidence might be taken out of town or secreted." In view of the apprehension thus entertained, it would seem that diligence and precaution would have suggested action rather than inaction in the preservation of the alleged evidence or its retention within the jurisdiction where it then was.

Under these circumstances and without discussion of the competency of the alleged evidence, which may well be questioned on other grounds, we are of the opinion that the trial court did not abuse its discretion in denying the motion for continuance. Judgment affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Young concur.